# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| GLENN CARPENTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No.: N23C-06-081 FJJ |
| v. | ) | |
| LIBERTY MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

Submitted: July 29, 2025
Decided: August 11, 2025

## OPINION AND ORDER
*on Defendant's Motion to Enforce Settlement Agreement
and Strike or Excuse Unenforceable Condition*

## DENIED

*Daulton Gregory and Bayard Marin, Esquires,* Marin & Gregory, LLC, Wilmington, DE, *Attorneys for Plaintiff.*

*Karine Sarkisian and Elizabeth Chalik, Esquires*, Kennedy's CMK LLP, Wilmington, DE, *Attorneys for Defendant*

**Jones, J.**

This case involves a claim by Plaintiff to recover under two separate insurance policies for underinsured motorist benefits issued by Liberty Mutual Insurance Company. The first policy covered a car that Plaintiff was operating at the time of the incident that gives rise to the claim. The second policy covered a motorcycle that was not involved in the accident. Defendants have asserted that Plaintiff cannot stack the two policies given the language of 18 *Del. C.* §3902 and have denied the claims under the motorcycle policy. In addition to the usual UIM claims, Plaintiff has asserted additional extra contractual claims including an Unfair Claims Insurance Practices Act claim and a claim for bad faith. The extra contractual claims revolve around allegations that the carrier acknowledged that the value of the Plaintiff's claims exceed the amount of coverage under the automobile policy, but Defendant failed to pay the policy limits under the automobile policy without Plaintiff signing a release releasing all claims under both the automobile and motorcycle policy.

Plaintiff previously filed a Motion for Summary Judgment arguing that he was entitled to the $100,000 under the automobile policy because Liberty Mutual agreed to tender that policy, and Plaintiff accepted the tender of that policy.[1] The factual basis for the offer was an April 28, 2022 letter to Plaintiff's counsel from Liberty Mutual's adjuster and an email response from Plaintiff's counsel to that adjuster.

---

[1] *See* Docket Item ("D.I.") 25.

The appropriate portion of the April 28, 2022 letter provided:

> On April 18, 2022, you presented a demand for Mr. Carpenter under the Underinsured Motorist bodily injury coverage for the accident of October 31, 2021. The demand was for $200,000.00, which is the total of the coverage stacked between the policies. As explained above, I am not able to meet this demand as the policy issued to Mr. Carpenter does not support it.
>
> However, I am in position to offer the available $100,000.00 under Mr. Carpenter's automobile policy claim 047435635-05 in exchange for a full and final release.

In a verbal decision, the Court denied Plaintiff's Motion for Summary Judgment.[2] The Court found that Liberty Mutual's offer of $100,000 was conditioned on Plaintiff releasing all claims that it had against Liberty Mutual. Since Plaintiff clearly wanted to retain the right to bring an action under the second policy, there was no meeting of the minds. As such, no contract was formed between the parties as to a binding agreement.

Plaintiff filed a renewed motion for summary judgment maintaining that a recent Supreme Court decision in *Ginsberg v. Harleysville Worcester Ins. Co.*[3] compelled a conclusion that plaintiff was entitled to recover under both polices and once again arguing that there was an agreement to settle the auto policy for the $100,000 policy limit.[4] This Court denied the motion summary judgement ruling that:

---

[2] D.I. 26.

[3] 2024 WL 4599219 (Del. 2024).

[4] *See* D.I. 32.

3

"…there was no meeting of the minds as to a settlement. Liberty Mutual agreed to settle the case 'in exchange for a full and final release.' Plaintiff wanted to continue to pursue the second policy as a condition of settlement. There was simply no agreement regarding the settlement. Therefore, Plaintiff is not entitled to summary judgment because there was no agreed upon settlement."[5]

The Court bifurcated the trial in this case electing to proceed to a trial to first determine the liability of the tortfeasor and the value of the Plaintiff's injuries. This case proceeded to a jury trial in December 2024. The jury determined that the value of plaintiff's injuries was $5,000. Since Plaintiff had received $25,000 from the tortfeasor's carrier, judgment on the UIM claim was entered in favor of the Defendant.[6]

Following trial, Plaintiff moved for a new trial which this Court denied.[7] Following this, Defendant moved for judgment on the pleadings.[8] The Court ruled that Counts 2-5 of the Complaint were resolved by the jury's verdict.[9] The Court allowed Count III, the claim for extra contractual damages to proceed.[10] The Plaintiff has now filed the instant Motion to Enforce Settlement Agreement and Strike or Excuse Unforeseeable Conditions.[11]

Plaintiff's first argument is that the Court should enforce the settlement agreement. This argument appears to be a rehash of the prior two motions filed by

---

[5] D.I. 40.
[6] D.I. 51.
[7] D.I. 52, 55.
[8] D.I. 59.
[9] D.I. 72.
[10] *Id.*
[11] D.I. 73.

Plaintiff seeking to enforce the settlement agreement. According to Plaintiff, the Court failed to consider Plaintiff's April 18, 2022 offer and, had this been considered, Plaintiff would be entitled to $100,000 because there was an agreement to pay the $100,000. Not so. The April 18, 2022 letter simply does not say that the Plaintiff was proposing two separate and independent settlement agreements. This is demonstrated by the last paragraph of the letter which states in part:

> I have been authorized to demand the full policy limits of $200,000. This is the full $100,000 from each Liberty Mutual Policy. If the $200,000 is not accepted in 30 days, I will have no other choice but to file a UIM claim and seek interest and costs. Any offer for the full policy limits after the 30 days must include interest and cost.[12]

Even if the Court accepted that the letters proposed two separate and independent settlements, there was still no meeting of the minds because Liberty Mutual never accepted the terms of any settlement without it being in "exchange for a full and final release." In short, no contract was formed by the April 18, 2022 and April 28, 2022 letters.

Citing the law of disproportionate forfeiture,[13] Plaintiff maintains that Liberty Mutual's post hoc condition would result in a grossly disproportionate forfeiture and the Court should disregard Liberty Mutual's insistence on the signing of a general release of all claims and enforce the settlement under the automobile policy. The

---

[12] *Id.* Exhibit ("Ex.") D.

[13] *Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 2025 WL 1213667, at *25 (Del. 2025).

problem with Plaintiff's argument is that, before the law of disproportionate forfeiture applies, there must be a valid contract between the parties to start with.[14] In the instant case, there was never a valid contract for settlement. Even if the original insurance contract can be used as the contract on which to base Plaintiff's claim (which appears to be Plaintiff's position), this principle "applies only where occurrence of the condition was not a material part of the agreed exchange."[15] In this case, I find that the condition of a release was a material part of the agreed exchange.

Invoking Section 183 of the Restatement (Second) of Contracts, Plaintiff further maintains that the Court should allow the enforcement of the contract to settle the claim because the requirement of a signed release for all claims is unenforceable. In support of this position, Plaintiff cites to 18 *Del. C.* Sections 2303 and 2304(16)(m). The cited sections come from Delaware's Unfair Practices in Insurance Statute which prohibits a person from engaging "an unfair or deceptive act or practice in the business of insurance."[16] Section 2304 (16)(m) specifically provides that "no person shall commit or perform with such frequency as to indicate a general business practice … failing to promptly settle claims , where liability has become reasonably clear under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage."

---

[14] *Id.* at *18.
[15] *Thompson St. Cap. Partners IV, L.P.*, 20215 WL 1213667 at *11.
[16] 18 *Del. C.* § 2303.

Unfortunately for the Plaintiff, the sections relied upon afford him no relief. First, the Delaware Unfair Practices in Insurance Statute does not provide a plaintiff with a private right of action.[17] Even if a private right of action existed, the statute speaks to a pattern of activity on the part of the insurer (with such frequency as to indicate a general business practice). There has been no showing that Defendant's conduct was part of a general business practice. In short, Plaintiff cannot rely on the cited sections of the insurance code to claim that the provision requiring that a release covering all claims is unenforceable against public policy.

For the above reasons, Defendant's Motion to Enforce Settlement Agreement and Strike Unenforceable Conditions is DENIED.

**IT IS SO ORDERED**.

_/s/ Francis J. Jones, Jr._
Francis J. Jones, Jr., Judge

cc:     File&ServeXpress

---

[17] *Price v. State Farm Mut. Auto Ins. Co.*, 2013 WL 1213292 (Del. Super. 2013), *aff'd*, 77 A.3d 272 (Del. 2013); *Yardley v. U.S. Healthcare*, 698 A.2d 979 (Del. Super. Ct. 1996); *Lipchock v. New Castle Cty.,* 2013 WL 4674855 (Del. Super. July 12, 2013); *Peterson v. 21st Century Centennial Ins. Co.*, 2015 WL 4154070 (Del. Super. July 9, 2015).